IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANTZ BERNARD, TIMOTHEUS HOMAS, ANTHONY ROSS, DEJEAN MURRAY, WILLIAM BROWN and JERRY SALTER, **Plaintiffs** v. EAST STROUDSBURG UNIVERSITY; ROBERT J. DILLMAN, Individually; ISAAC W. SANDERS, Individually; KENNETH BORLAND, Individually; and VICTORIA L. SANDERS, Individually, **Defendants** | No. 3:09cv525 (Judge Munley) |

## MEMORANDUM

Before the court for disposition are the defendants' motions to dismiss plaintiffs' second amended complaint. The motions have been fully briefed and argued. They are thus ripe for disposition.

**Background[1]**

According to the plaintiffs' Second Amended Complaint, the facts are as follows: The plaintiffs are all current or former students at Defendant East Stroudsburg University ("ESU"). In 2000, Defendant Robert J. Dillman, ESU's president, hired Defendant Isaac Sanders as Vice President of Advancement and Executive Director of the ESU Foundation. According to the plaintiffs, Defendant Isaac Sanders used this position to

---

[1]As we are dealing with motions to dismiss we accept as true all factual allegations in plaintiffs' complaint. See Estelle v. Gamble, 429 U.S. 97, 99 (1976).

1

target minority men, particularly African-Americans, for the solicitation of sexual behavior and to create a sexually hostile learning environment. As part of his scheme to sexually harass the men, he acted as their on-campus mentor, advisor, friend and employer, providing them with scholarships, student worker jobs and graduate assistant jobs with his office.

Defendant Isaac Sanders' behavior was open and notorious to such an extent that Defendant Dillman, Defendant Kenneth Borland, Provost of ESU, and Defendant Victoria Sanders, Associate Vice President for Special Projects, Diversity and Equity of ESU, knew about the conduct as early as 2001. These defendants used their positions with ESU to cover up Isaac Sanders' conduct and to interfere in the investigation of complaints that plaintiffs made.

Based upon these facts, the plaintiffs instituted the instant civil rights action. The complaint contains four causes of action: Count I, versus ESU based upon Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. (which is an education law that prohibits, *inter alia*, sexual harassment against students); Count II, versus all defendants except ESU, a civil rights claim made pursuant to 42 U.S.C § 1983 alleging that plaintiffs have a liberty interest in bodily integrity, which defendants violated under color of state law; Count III, versus all defendants except ESU, asserting a conspiracy to violate constitutional rights under 42 U.S.C. § 1985; and Count IV, versus Defendants Dillman, Borland and Victoria L. Sanders, asserting negligence in failing to protect against a violation of rights under 42 U.S.C. § 1986.

Two separate motions to dismiss have been filed. ESU and three of

its administrators, Robert Dillman, Kenneth Borland and Victoria L. Sanders ("University Defendants" or "University") filed the first motion and the Defendant Isaac Sanders filed the other motion to dismiss.[2]

**Jurisdiction**

As this case is brought pursuant federal anti-discrimination statutes, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of Review**

This case is before the court pursuant to defendants' motion to dismiss for failure to state a claim upon which relief can be granted filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint is tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff must describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next

---

[2]Two defendants share the last name Sanders. For simplicity, we will refer to Isaac Sanders as "Defendant Sanders" or "Sanders", and we will refer to Victoria Sanders as "Defendant Victoria Sanders."

3

stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

As noted above, two motions to dismiss have been filed, one by the University Defendants and one by Defendant Isaac Sanders. We will discuss each in turn.

**The University Defendants Motion To Dismiss**

**I. Statute of limitations**

### A. Title IX Claims

The University first argues that the claims raised by Plaintiffs Murray, Brown and Salter are barred by the statute of limitations with regard to the Title IX claims. Plaintiffs acknowledge that the defendants are correct with this argument. (Doc. 16, Pls.' Opp. Br. at 6). Thus, the motion to dismiss the Title IX claims as to Plaintiffs Murray, Brown and Salter will be granted.

### B. Section 1983 claims

Next, the University Defendants challenge the plaintiffs' section 1983 claims based upon the statute of limitations. The statute of limitations for section 1983 is two years. Lake v. Arnold, 232 F.3d 360, 368-69 (3d Cir. 2000). The University argues that the claims raised by Plaintiffs Murray, Brown and Salter are barred by this statute of limitations.[3]

Plaintiffs originally filed their complaint on February 13, 2009. (Doc. 1). Therefore, the University argues that plaintiffs may only assert claims that occurred, at most, two years prior to that date, that is, February 13, 2007. In other words, anything alleged to have occurred before February 13, 2007 is barred by the statute of limitations. (Doc. 1-3, Original Compl.). Defendant argues that specific actions alleged by Murray, Brown and

---

[3]Generally, the statute of limitations is an affirmative defense and as such must be raised in an answer, not in a motion to dismiss. Under the "Third Circuit Rule," however, a motion to dismiss based upon the statute of limitations may properly be granted where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks and citation omitted).

Salter all occurred prior to February 13, 2007 and anything that happened afterward is not actionable because they were no longer students at that point. Plaintiffs do not dispute the defendants' computation of the statute of limitations, rather, they assert that the "continuing violation theory" serves to extend the statute of limitations for these three plaintiffs. After a careful review, we agree with the defendants that the statute of limitations bars the section 1983 claims of these three plaintiffs.

The continuing violation theory is an equitable exception to the statute of limitations. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). Under the continuing violation doctrine, " 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" Id. (quoting Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)). For the continuing violation theory to apply, a defendant's actions must be "more than the occurrence of isolated or sporadic acts." Id. (internal quotation marks and citation omitted). Courts analyze the following three factors to determine whether the acts complained of qualify for the continuing violation doctrine:

> (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency -whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of continuing intent to discriminate.

Id. Once a plaintiff establishes that the doctrine applies and that one violation occurred within the period established by the statute of limitations, a plaintiff may then "offer evidence of, and recover for, the entire continuing

violation." West, 45 F.3d at 755.

We will examine the claims of Murray, Brown and Salter separately.

### 1. Plaintiff Dejean Murray

Plaintiff Dejean Murray became a student at ESU beginning in September 2003. He worked with Defendant Sanders to reactivate a chapter of the Kappa Alpha Psi fraternity. (Doc. 28, Second Am. Compl. ¶¶ 86-87). With regard to the first allegation of sexual harassment, in the spring of 2005, Defendant Sanders gathered those interested in reinstating the fraternity to watch a movie. Afterward, he asked them if they would suck snake poison from the tip of the penis of one of the other fraternity pledges. (Id. ¶ 91). He told them that they should. (Id.)

The second instance of inappropriate behavior occurred several months later. At the end of the fall semester 2005, Isaac Sanders invited Murray and other students to the alumni center for drinks and to celebrate Murray's graduation. (Id. ¶ 93). Murray found Sanders in his office drinking cognac and watching pornography. (Id.) After a couple of drinks, Sanders suggested they all go to see a film. (Id. ¶ 94). He asked Murray to drive him there. On the way, Sanders began tapping Murray's leg and put his hand very high on Murray's thigh, his crotch and his genitals. (Id. ¶ 94). Murray threw Sanders hands off of his body and told him that "nothing funny" was going to happen. (Id.) Sanders again tried touching Murray in a sexual manner on the drive home from the movie. (Id. ¶ 95).

These are the sole allegations of inappropriate conduct made by Plaintiff Murray before the running of the statute of limitations. Applying the continuing violation theory factors to these facts, it appears that applying the doctrine is not appropriate. In essence there are two

instances, the first is a lewd comment made at the fraternity organization meeting, the second a series of occurrences that happened at the celebration of Murray's graduation. The two instances do involve the same subject matter, that is, sexual harassment. However, because only two incidents are alleged over the course of several months, we find that they are mere sporadic and isolated events, and the continuing violation theory is inapplicable.

Subsequently, Plaintiff Murray provided statements regarding the inappropriate conduct to ESU's counsel. Afterward, in October 2008, Sanders sent Murray "nasty, hostile, and threatening e-mails in an attempt to intimidate him and dissuade him from pursuing his sexual harassment claims." (Id. ¶ 101). Because the events that occurred outside the statute of limitations were sporadic at best, they are not saved by the allegation that three years after these events Defendant Isaac Sanders sent threatening e-mails in order to dissuade him from pursuing his sexual harassment claims.

Accordingly, Plaintiff Murray's section 1983 claim is barred by the statute of limitations.

### 2. Plaintiff William Brown

Plaintiff William Brown became a student at ESU in the fall of 2002. (Doc. 28, Second Am. Compl. ¶ 104). Sanders assisted Brown in obtaining a student worker job in the alumni center. (Id. ¶ 106). He became a mentor to Brown. (Id. ¶ 107). He even arranged for Brown to keep his student job through the summer of 2005 although he was not taking any classes. (Id. ¶ 107).

Brown was present in the Spring of 2005 at the fraternity

8

organizational meeting as set forth above. This is the first claim of sexual harassment that he raised. (Id. ¶¶ 112-113).

The second incident occurred months later. In October 2005, Sanders asked Brown to accompany him on a non-school related trip to Kentucky along with Plaintiff Salter. (Id. ¶ 108). On the way, before picking up Salter, Sanders tried to touch Brown in an inappropriate sexual manner. (Id. ¶ 110). Brown indicated to Sanders that he was not interested in that sort of behavior with him. (Id.) Sanders also indicated on the trip that he wanted to share a hotel bed with Brown. (Id. ¶ 111). Brown told Sanders that he would not share a bed with him and the fact that Sanders would even think that he would agree to such a thing was disturbing. (Id.)

Brown graduated from ESU on May 13, 2006. He, however, continued to work in the school's Advancement Office, until Sanders's continuing improper conduct made him so uncomfortable that he resigned in July 2006. (Id. ¶ 116). When Brown visited the ESU campus in April 2007, Sanders again approached him and attempted to engage in an inappropriate relationship. (Id. ¶ 117). This last incident falls within the statute of limitations, and therefore, if the continuing violation theory applies it could potentially help protect Brown's older claims from a statute of limitations challenge.

We will review these facts in light of the continuing violation doctrine factors - subject matter, frequency and degree of permanence. Cowell, 263 F.3d at 292.

The subject matter of the alleged incidents appear to constitute the same type of discrimination, that is sexual harassment. Therefore, the first

9

factor is met.

The second factor, frequency, is also met.  Plaintiff Brown is only specific as to two instances that happened several months apart.  However, he also indicates that when he worked with Defendant Sanders in the Advancement Office, the improper conduct continued.  In viewing the facts in the light most favorable to the plaintiff, we find that this allegation is sufficient to establish frequency at this stage.

The third factor, degree of permanence, however, is determinative and reveals that the statute of limitations has run.  In examining this factor, the court must determine whether the act of discrimination had a degree of permanence which should have triggered plaintiff's awareness of and duty to assert his rights.  Cowell, 263 F.3d at 292.  Here, the Second Amended Complaint alleges that the acts did have such a degree of permanence.  Plaintiff Brown avers that as he worked with Defendant Sanders, the inappropriate conduct continued to such a degree that he left his job at the University.  At the time that the harassment became so intolerable that the plaintiff needed to leave his employment, Plaintiff Brown's awareness of his duty to assert his rights should have been triggered.  He resigned in July 2006, the complaint was not filed until over two years later in February 2009.  Thus, the statute of limitations bars his section 1983 cause of action.[4]

---

[4]The Second Amended Complaint also asserts that in April 2007, Plaintiff Brown visited the ESU campus and encountered Defendant Sanders.  Sanders again attempted to engage him in an inappropriate relationship.  (Doc. 28, Second Am. Compl. at ¶ 117).  As addressed more fully below, for Sanders to be held liable for a section 1983 violation he must be a "state actor".  The complaint does not indicate that Sanders was

### 3. Plaintiff Jerry Salter

Plaintiff Jerry Salter enrolled at ESU in the summer of 2003. (Doc. 28, Second Am. Compl. ¶ 120). He was present for the lewd comment at the fraternity organization meeting. (Id.. ¶ 123). Sanders made inappropriate comments to Salter regarding women.[5] (Id. ¶ 127). Murray and Brown confided in Salter about Sanders sexual advances. (Id. ¶ 126).

In early summer 2008, Vincent Dent, Defendant Sander's assistant in the Office of Advancement at ESU, approached Salter at Sanders' direction. (Id. ¶ 129). He tried to coerce Salter into revealing who was making allegations against Sanders. (Id.) Dent and Sanders continued to harass Salter up to the point of the filing of the complaint in an attempt to prevent him from revealing his knowledge about Sander's improper conduct. (Id.) Sander approached Salter's employer in summer of 2008 through winter of 2009 attempting to get his employment terminated. (Id. ¶ 130).

We find that Salter's allegations do not qualify for the application of the continuing violation theory. Defendant Sanders made the lewd comment at the fraternity organization meeting and - at unspecified times -

---

a state actor with regard to Brown in April 2007 when Brown was no longer a student or employee of the university.

[5]Specifically, the Second Amendment Complaint sets forth this claim as follows: "On several occasions, Defendant Sanders also made inappropriate comments to J.S. such as 'you should stay away from women at ESU, especially white girls because they are nothing but trouble and you will end up like O.J., getting in trouble with girls.' Defendant Sanders also used his eldest son, who had fathered a child at a young age, as an example of how girls try to 'trap' a men." (Doc. 28, Second Am. Compl. ¶ 127).

11

made disparaging remarks about women to Salter. As pled, these claims are sporadic and do not even necessarily rise to the level of sexual harassment. Accordingly, application of the continuing violation theory is inappropriate and Plaintiff Salter's section 1983 claims will be dismissed as untimely.

### C. Section 1985 and section 1986 claims

The University argues that plaintiffs' section 1985 claims and section 1986 claims are also barred by the statute of limitations.[6] Section 1985 has a two-year statute of limitations and section 1986 has a one-year statute of limitations.

We agree with the University on the applicable statute of limitations. See Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989) (holding that Pennsylvania's two-year statute of limitations applies to actions under § 1985(3)); 42 U.S.C. § 1986 (stating that, "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").

Because we found above that the statute of limitations bars the claims of Murray, Brown and Salter section 1983 action, the court concludes that the section 1985 with its two-year statute of limitations and section 1986 with a one-year statute of limitations are also barred.

## II. Sufficiency of the pleadings

Defendants also challenge the sufficiency of the pleadings with respect to the plaintiffs' section 1983 claims. For a section 1983 claim,

---

[6]Section 1985 prohibits conspiracies to violate civil rights. 42 U.S.C. § 1985. Section 1986 provides a cause of action against those who know a violation of section 1985 is to occur and do not stop it if they have the power to stop it. 42 U.S.C. § 1986.

two requirements must be met, there must be 1) a state actor who 2) deprives someone of a constitutional right. Here the University Defendants assert that plaintiffs have not alleged a "state actor."  Once the plaintiffs graduated, Sanders was no longer a state actor as to them, according to the defendants.

Plaintiffs argue that all defendants acted under color of state law. Defendant Sanders used his position as Vice President of Advancement to gain plaintiffs' confidences and provide them with gifts including scholarships, and student worker or graduate assistant positions in his office. The other administrators at the University used their positions to cover up Sanders' improper conduct.

The University Defendants address the issue of "state actor" with regard to Plaintiffs Williams, Brown and Salter. They assert that once these plaintiffs graduated, Sanders was no longer a state actor as to them. We agree. While they were students at the University, Defendant Sanders' position as to the plaintiffs was one of a state actor. His interactions with the plaintiffs was due to his position as a state employee. Once these plaintiffs graduated[7], however, Sanders' position as to them changed. Sanders no longer had any official authority over the students. The plaintiffs have not alleged anything in the Second Amended Complaint indicating that once they graduated, Sanders was still a state actor as to these three plaintiffs. Accordingly, the section 1983 claims of Williams, Brown and Salter that fall within the statute of limitations will be dismissed

---

[7]In the case of Plaintiff Brown, Sanders maintained his state actor status past graduation because Brown continued to work with Sanders at the University. As explained above, however, the statute of limitations bars Browns claims of harassment while he worked with Sanders.

13

for failure to sufficiently plead a section 1983 cause of action.

### B. 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986

Plaintiff also asserts a claim for civil rights conspiracy pursuant to 42 U.S.C. §1985(3).[8] Defendants attack this claim as lacking the required specificity to survive a motion to dismiss. After a careful review, we disagree with the defendants.

Section 1985 provides a cause of action for conspiracy to violate civil rights. The elements of such a cause of action are: 1) a conspiracy; 2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake, 112 F.3d at 685 (citing Griffin v. Breckenridge, 403 U.S. 88 (1971)).

In pleading a conspiracy claim, a plaintiff must do more than rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989). A properly pled conspiracy claim must include "supportive factual allegations" which "address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Rose, 871 F.2d at 366. Defendants argue that plaintiffs' complaint fails to allege a "meeting of the minds" with regard to the conspiracy and also fails to set forth the period of the conspiracy, its object or the actions that the defendants took

---

[8]The following analysis refers to the Plaintiffs Bernard, Homas and Ross as the claims of the other plaintiffs will be completely dismissed.

14

to achieve the purpose.

A review of the Second Amended Complaint reveals that plaintiffs highlight specific acts and the specific rights which those acts violated. Read broadly, then, the complaint makes out a claim for conspiracy against the moving defendants. For example, the Second Amended Complaint alleges that Defendants Dillman, Borland and Victoria Sanders together removed relevant and potentially damaging information from a report by Arthur Breese, the Director of Diversity and Campus Mediation, who was investigating a sexual harassment claim against Defendant Isaac Sanders. (Doc. 28, Second Am. Compl. ¶ ¶ 135 - 140). The complaint also asserts that anonymous letters containing allegations against Isaac Sanders were sent to Defendant Dillman. Instead of turning these letters over to Breese, Dillman and Defendant Victoria Sanders provided the letters to Defendant Isaac Sanders. (Id. at ¶ ¶ 142 - 145). Plaintiffs also allege defendants improperly destroyed evidence, disregarded evidence and engaged in a cover up with regard to a second investigation when Defendant Borland was the acting president of ESU. (Id. at ¶ ¶ 148 - 150). Plaintiffs complain that the the investigations made by the university were flawed, faulty biased and incomplete due to Defenant Dillman's and Defendant Borland's attempt to insulate Defendant Isaac Sanders from liability.

Plaintiffs' Second Amended Complaint thus points to specific acts against the defendants in attempting to cover-up Defendant Sanders' alleged wrongdoing. It also alleges that Sanders' sexual harassment violated the plaintiffs' constitutional rights. Read broadly then, the Second Amended Complaint makes out a claim for conspiracy against the moving

15

defendants. The court will deny the motion on this point.

**Defendant Sanders' motion to dismiss**

Defendant Isaac Sanders, the alleged harasser, filed a separate motion to dismiss. Sanders' motion raises two issues that we will discuss separately.

**I. State Actor/Section 1983**

First, Defendant Isaac Sanders argues that he cannot be considered a state actor for purposes of section 1983 liability. The University Defendants raised this issue with regard to Plaintiffs Salter, Murray and Brown and the statute of limitations. Defendant Sanders provides a more inclusive argument with regard to whether he was a state actor. He applies his argument to all the plaintiffs.[9]

As stated above, in order to be held liable under section 1983, a defendant must be a "state actor." Above, we have indicated that the Second Amended Complaint fails to allege anything that would render Defendant Isaac Sanders a state actor for the actions he took once Murray, Brown and Salter graduated from, or finished working at, the University. Defendant Sanders would have us take this analysis a step further and conclude that, even as to the actions taken while the plaintiffs were in school, Sanders was not a state actor.

The Third Court Court of Appeals has described this area of law as follows:

> It is well settled that an otherwise private tort is not

---

[9] Defendant Sanders also argues that the plaintiffs failed to allege the conspiracy with the requisite specificity. This argument is denied for the same reason it was denied above with regard to the University Defendants.

16

>committed under color of law simply because the tortfeasor is an employee of the state. Rather, in order for the tortfeasor to be acting under color of state law, his act must entail "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)( quoting United States v. Classic, 313 U.S. 299, 326 (1941)). The court further explained: " '[U]nder color of law' means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." Id. at 1151 (quoting Screws v. United States, 325 U.S. 91, 111(1945)).

The instant facts of this case are similar to a case from the Ninth Circuit Court of Appeals where an employee of the Washington State Employment Security office raped two women. Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476 (9th Cir. 1991). In Dang Vang, the court found the defendant was a state actor because the two women he raped, refugees fleeing Laos, were dependent upon the government and "in awe" of government officials. Id. at 480. They came to the defendant in his official capacity for assistance in finding jobs. Id. at 480.

Likewise, in the instant case, the Defendant Isaac Sanders came into contact with the plaintiffs because of his state employment. Defendant Sanders is alleged to have used his position as Vice President of Advancement to gain the plaintiffs' confidences and provide them with gifts including scholarships and student worker or graduate assistant positions in his office.[10] His state employment was central in choosing these

---

[10]In addition to the facts outlined above with regard to Plaintiffs Murray, Brown and Salter, the Second Amended Complaint alleges: Defendant Isaac Sanders was introduced to Plaintiff Bernard as a possible mentor and a guide through the financial assistance process. Sanders

17

plaintiffs to allegedly victimize. Thus, we find that the complaint sufficiently alleges state action, for at least the time that the plaintiffs were students or otherwise employed by the university. Defendant Isaac Sanders argues that under the plaintiffs' theory of the case, "every state employee who engages in wrongful conduct acting under color of state law." (Doc. 13, Def. Br. at 7). We do not read plaintiffs' allegations so broadly. They seek to hold Defendant Isaac Sanders liable for actions he took that were facilitated by his position with the state - actions made possible because of his position as an administrator at a state university. Accordingly, we find no merit to his arguments and will deny his motion to dismiss with regard to whether Sanders was a state actor.

**II. Conspiracy Claims**

Defendant Sanders' second argument is that the complaint does not allege a conspiracy with the requisite specificity. This issue was also argued by the University Defendants. For the reasons set forth above with regard to this issue, Defendant Sanders' motion to dismiss will be denied.

**Conclusion**

For the reasons set forth above, the claims made by Plaintiffs DeJean Murray, William Brown and Jerry Salter will be dismissed from the case. The motions to dismiss are denied in all other respects.

---

indicated that he would help Bernard gain employment at the Alumni Center. (Doc. 28, Second Am. Compl. ¶ 28). Sanders offered Plaintiff Homas a job in the Office of Advancement. (Id. ¶ 42). Sanders acted as a education mentor to Plaintiff Ross and offered him a Graduate Assistantship working for Sanders himself. (Id. ¶¶ 63, 66).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANTZ BERNARD, TIMOTHEUS HOMAS, ANTHONY ROSS, DEJEAN MURRAY, WILLIAM BROWN and JERRY SALTER, | : : : : : : | No. 3:09cv525<br><br>(Judge Munley) |
| **Plaintiffs** | : | |
| v. | : | |
| EAST STROUDSBURG UNIVERSITY; ROBERT J. DILLMAN, Individually; ISAAC W. SANDERS, Individually; KENNETH BORLAND, Individually; and VICTORIA L. SANDERS, Individually, | : : : : : : : : : | |
| **Defendants** | : | |

## ORDER

    **AND NOW**, to wit, this 12th day of October 2010, the defendants' motions to dismiss (Docs. 8, 9) are **GRANTED** in part and **DENIED** in part. The motions are granted with respect to Plaintiffs Dejean Murray, William Brown and Jerry Salter, and these plaintiffs are dismissed from the case. The motions are denied in all other respects.

                                              **BY THE COURT:**

                                              **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**