IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANTZ BERNARD, et al.,

    **Plaintiffs**

v.      3:09-CV-00525
     (JUDGE MARIANI)

EAST STROUDSBURG
UNIVERSITY, et al.,

    **Defendants**

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY

This action arises out of allegations of sexual harassment by Defendant Isaac Sanders against Plaintiffs Frantz Bernard, Anthony Ross, and Timotheus Homas. Plaintiffs claimed violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*, by Defendant East Stroudsburg University ("ESU"), as well as violations by Defendants Robert J. Dillman, I. Sanders, Kenneth Borland, and Victoria L. Sanders, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Further, Plaintiffs alleged violations by Dillman, Borland and V. Sanders under 42 U.S.C. § 1986.

At the close of discovery, Defendants ESU, Dillman, Borland, and V. Sanders (collectively hereinafter "University Defendants") and Defendant I. Sanders all moved for summary judgment (Doc. 93; Doc. 128). On April 14, 2014, the Court granted University Defendants' motion in whole (Doc. 141), and granted in part and denied in part I. Sanders'

motion (Doc. 143). As a result, Plaintiffs filed a motion pursuant to Fed. R. Civ. P. 59(e) to "Alter or Amend the Judgment Entered in Favor of Defendants East Stroudsburg University, Robert Dillman, and Victoria Sanders" with respect to Count I (Title IX) and Count II (42 U.S.C. § 1983) (Doc. 145).[1]

The issues have now been fully briefed. For the reasons that follow, Plaintiffs' motion (Doc. 145) will be denied.

## II. ANALYSIS

### A. Procedural Defects

As a threshold issue, Plaintiffs' motion is procedurally flawed. Plaintiffs assert relief pursuant to Fed. R. Civ. P. 59(e), which is inapplicable where the order that a party seeks to have reconsidered is not a final judgment or order. *See Bausch & Lomb, Inc. v. Moria S.A.*, 222 F.Supp.2d 616, 669 (E.D. Pa. 2002); *Dayoub v. Penn–Del Directory Co.*, 90 F.Supp.2d 636, 637 (E.D.Pa.2000) ("neither Rule 59(e) nor 60(b) applies because the order [Defendant] seeks to have reconsidered is not a final judgment or order but rather an interlocutory decision. *See Davidson v. United States*, 1998 WL 314706, at *2 (E.D.Pa. June 15, 1998) (denial of partial motion for summary judgment is not a final judgment, order, or proceeding within Rule 60(b) but rather an interlocutory decision); 10A CHARLES A.

---

[1] Plaintiffs do not request that the Court "alter or amend" its judgment with respect to Count III (42 U.S.C. § 1985) or Count IV (42 U.S.C. § 1986). Additionally, Plaintiffs do not reference Kenneth Borland in their motion or address any of the Court's factual findings with respect to Borland in their supporting brief. Therefore, we deem the grant of summary judgment of Counts III and IV with respect to ESU, Dillman, and V. Sanders, as well as the grant of summary judgment to Borland on all Counts, as matters on which Plaintiffs do not seek review.

2

WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civ.3d § 2715 at 264 (West 1998) ('the denial of a Rule 56 motion is an interlocutory order from which no appeal [to the court of appeals] is available until the entry of judgment following the trial on the merits')."). Further, "ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999).

Due to Plaintiffs' improper resort to Rule 59, Defendants correctly argue that, even if the Court were to construe Plaintiffs motion to alter or amend as a motion for reconsideration, Plaintiffs are time-barred. (Doc. 154, at 4). Pursuant to Local Rule 7.10, "[a]ny motion for reconsideration or reargument must be accompanied by a supporting brief and filed within fourteen (14) days after the entry of the order concerned." Here, Plaintiffs filed their motion on May 12, 2014, 28 days after the Court's April 14, 2014 Order granting the University Defendants summary judgment, and did not file their supporting brief until May 27, 2014. (*See* Docs. 141, 145, 146). While district courts may "prescribe rules for the conduct of court business so long as those rules are consistent with the Acts of Congress and the Federal Rules of Procedure," *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 173 (3d Cir.1990), the court may only "depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not

unfairly prejudice a party who has relied on the local rule to his detriment," *United States v. Eleven Vehicles, Their Equip. & Accessories,* 200 F.3d 203, 215 (3d Cir.2000). [2]

In their Reply Brief, Plaintiffs admit that the University Defendants are correct in their assertion that the Court's grant of summary judgment is not "final", and therefore may not be properly heard under Fed. R. Civ. P. 59, and do not specifically address Defendants' timeliness argument. (Doc. 158, at 1-2). However, they assert that this Court has the authority to reconsider its grant of summary judgment under Fed. R. Civ. P. 54(b). (*Id.*). Plaintiffs rely on Rule 54(b)'s provision that ". . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (Doc. 158, at 2 (quoting Fed. R. Civ. P. 54(b))). Nonetheless, reconsideration under Rule 54(b) by a district court "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 167 (2d Cir. 2003) (internal quotations omitted); *see also* 1 Moore's Federal Rules Pamphlet § 54.4[5] (2014) (revisitation of an uncertified order "will only occur if consistent with the

---

[2] Because Plaintiffs do not attempt to provide the Court with any rationale for departing from Local Rule 7.10, and seemingly admit that their motion can only be brought pursuant to Fed. R. Civ. P. 54(b), we deem Plaintiffs' motion as untimely in this regard.

4

principles of the case law doctrine."). However, even if the Court interprets Plaintiffs' motion as one pursuant to Rule 54(b), Plaintiffs fail to meet the requisite elements.

## B. Plaintiffs' Motion Treated as One for Reconsideration

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Specifically, the motion is generally permitted only if (1) there is an intervening change in the controlling law; (2) new evidence becomes available that was not previously available at the time the Court issued its decision; or (3) to correct clear errors of law or fact or prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, "motions for reconsideration should not be used to put forward arguments which the movant . . . could have made but neglected to make before judgment." *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (internal quotation marks and alterations omitted) (quoting *Reich v. Compton*, 834 F. Supp. 2d 753, 755 (E.D. Pa. 1993) *rev'd in part and aff'd in part on other grounds*, 57 F.3d 270 (3d Cir. 1995)). Nor should they "be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Donegan v. Livingston*, 877 F. Supp. 2d 212, 226 (M.D. Pa. 2012) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)).

Plaintiffs contend that "this Court improperly made findings of fact, ignored facts presented by Plaintiffs, and misconstrued other facts established by Plaintiffs . . . [and] also

5

used an overly narrow standard for whether or not the ESU Defendants were deliberately indifferent." (Doc. 146, at 3). Plaintiffs do not argue there has been an intervening change in the controlling law or that new evidence is now available that was not previously available at the time the Court granted University Defendants' motion for summary judgment; rather, they appear to focus exclusively on an argument that the Court made clear errors of law or fact. (*See generally*, Doc. 146, Doc. 158).

In finding that the plaintiffs failed to establish a violation of Title IX, the Court relied on Plaintiffs' failure both to demonstrate deliberate indifference on the part of the University Defendants, as well as actual knowledge on the part of Dillman, the appropriate person to take corrective action. (Doc. 140, at 41- 47, 64). With respect to actual knowledge, the Court determined that "[t]here is an absence of any genuine issue of fact as to the University Defendants' assertion that Dillman, V. Sanders, and Borland, were not aware of any sexual harassment by I. Sanders prior to August 23, 2007 . . . [and] that while the fact as to the timing of the University Defendants' actual knowledge is material, Plaintiffs have not put this fact at issue." (Doc. 140, at 46-47). Plaintiffs do not directly address this argument, and implicitly appear to accept this finding, relying only on incidents that took place after August, 2007,[3] and focusing instead on the deliberate indifference standard.

---

[3] As a result, the plaintiffs only peripherally reference Homas, and solely in the context that Michelle Drame allegedly knew of the purported sexual assaults on Homas. (Doc. 146, at 12; Doc. 158, at 6). Therefore, the Court interprets Plaintiffs' absence of any mention of incidents including Homas after August, 2007, as an implicit acknowledgment that Homas cannot establish deliberate indifference by the University Defendants against him.

6

Plaintiffs overarching argument is that the Court erred in its application of the Title IX deliberate indifference standard. Under Title IX, a plaintiff cannot recover damages "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual knowledge of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277, 118 S.Ct. 1989, 158 A.L.R. Fed. 751 (1998).

To be "deliberately indifferent", the University Defendants' "response to the harassment, or lack of response, must have been "clearly unreasonable in light of the known circumstances." *Davis Next Friend LaShona D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648-649, 119 S.Ct. 1661, 143 L. Ed. 2d 839 (1999). Deliberate indifference requires an "official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. This standard requires that the official disregard a known or obvious consequence of his action or inaction. Therefore, the appropriate remedial action necessarily depends on "the particular facts of the case – the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 661 (5th Cir. 1997).

Furthermore, deliberate indifference incorporates a causation requirement. The Title IX funding recipient's deliberate indifference must further "cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 644-645 (internal quotations omitted). This harassment must take place in a context subject to the school's

7

control. *Id.* at 645. Therefore, the harassment, or likelihood or vulnerability of a student to be subjected to it, must occur subsequent to an official's decision to not remedy a known violation. However, while "a minimalist response is not within the contemplation of a reasonable response," the absence of a more aggressive action does not necessarily amount to deliberate indifference. *Escrue v. N. Okla. Coll.*, 450 F.3d 1146, 1155 (10th Cir. 2006) (quoting *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000)).

Plaintiffs argue that "this Court ignored or misinterpreted material facts cited by the Plaintiffs that clearly demonstrate that ESU failed to properly insulate the Plaintiffs from I. Sanders and failed to conduct a thorough investigation into Bernard's complaint." (Doc. 146, at 6). Because Plaintiffs merely repeat the same facts and arguments previously presented to, and rejected by, the Court, and do not offer any indication of clear errors of law or manifest injustice, instead impermissibly using this motion "as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant," *Donegan*, 877 F. Supp. 2d at 226, we will only briefly address Plaintiffs' contentions that merit a reiteration of our prior findings.

First, Plaintiffs appear to recognize that their arguments with respect to the occurrence of University Defendants' alleged "intentional acts of discrimination" after Bernard filed his complaint, are insubstantial with respect to Bernard, and they now focus on

the purported incidents involving A. Ross.[4] Specifically, Plaintiffs argue that I. Sanders "continued to attempt to engage A. Ross in an inappropriate relationship", including attempts to "groom Ross and to obtain sexual favors from him." (Doc. 146, at 7). This argument misinterprets the deliberate indifference standard. As the Court previously stated, "[p]ost-August, 2007, with the exception of I. Sanders' payment of A. Ross' outstanding bill, each incident alleged by Ross occurred after he had officially graduated" and that "[t]his isolated payment, without more, is insufficient to establish further harassment." (Doc. 140, at 49). Because it is undisputed that A. Ross did not know about this payment until August, 2008, it cannot follow that this payment constituted an attempt to "groom" A. Ross while he was a student.

In their Reply Brief, Plaintiffs raise a new argument, stating that A. Ross "was prevented from applying for graduate school because of I. Sanders' continuing attempts to engage him in an improper sexual relationship." (Doc. 158, at 2). As Plaintiffs did not raise this issue until they submitted their reply brief, the Court is under no obligation to address this argument. *See Dreyer v. Sheaffer*, 2009 WL 917829, at *3 (M.D. Pa. 2009) (In ruling on a motion, "a district court need not address issues raised for the first time in a reply brief"); *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (collecting cases)

---

[4] The only "intentional acts of harassment" that Plaintiffs reference with respect to Bernard are the alleged "attempt to intimidate Bernard" (Doc. 146, at 8), which the Court deemed insufficient "to create a genuine issue for trial to demonstrate retaliation and/or harassment" (Doc. 140, at 51), and that "ESU did nothing to insulate Bernard from further contact with I. Sanders" because Bernard had already left his job in the advancement office (Doc. 146, at 8). It is illogical to assert that Bernard's proactive actions, taken prior to the filing of Bernard's complaint and the University's knowledge of his allegations, can now be used to illustrate deliberate indifference on the part of the defendants.

("[a] reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues").

In support of their contention that the Court was incorrect in determining that Plaintiffs did not establish deliberate indifference on the part of the University Defendants, Plaintiffs also argue that the Court "ignored a plethora of evidence" demonstrating the inadequacy of Arthur Breese's investigation. (Doc. 146, at 9). In particular, Plaintiffs point to: (1) the "insufficiency of ESU's Notice of Non-Discrimination"; (2) "limitations placed on Breese's investigation"; (3) "failure to share the anonymous letters"; and (4) that there was "no finding whether it was more likely than not that the harassment occurred." (Doc. 146, at 9-14). The Court specifically addressed each of these arguments in detail in the Memorandum Opinion granting University Defendants summary judgment and, in the absence of any new evidence offered by Plaintiffs, or any explanation as to how the Court improperly applied the deliberate indifference standard when analyzing these claims, we refer Plaintiffs to our previous Opinion (Doc. 140, at 51-64).

Defendants properly point to three issues that the Court did not specifically address in its Memorandum Opinion (Doc. 140), namely, (1) the University's purportedly inconsistent treatment of I. Sanders and Julie Ann Simpson, the women's basketball coach; (2) Charmaine Clowney's opinions regarding ESU's anti-discrimination laws and anti-harassment policies; and (3) the minimal communication between Dillman and Breese after Breese submitted his final report. (Doc. 154, at 19-20; Doc. 146, at 7, 9-10, 14, 16-17).

10

With respect to Julie Ann Simpson, Plaintiffs contend that "unlike I. Sanders, Dillman immediately placed Coach Simpson on administrative leave." (Doc. 146, at 7). However, Dillman's deposition, upon which Plaintiffs rely, demonstrates important factual differences between the two situations. In the case of Simpson, "administrative leave was given based on the fact that in that circumstance when you looked at the whole picture Juliene [sic] Simpson had 14 players reporting to her [and c]onsequently, [Dillman] couldn't move 14 players away from her." (Dep. of Robert Dillman, at 45-46). In contrast, Franz Bernard was both the only student making allegations in August, 2007, and could also easily be moved away from I. Sanders.[5] The case of Simpson did not consist of one person's word against another person's, which requires a more careful and delicate analysis by a decision-maker prior to taking action, but instead the accusations and complaints of 14 women. Furthermore, once other students, including Ross and Homas, came forward in June, 2008, the University suspended I. Sanders in July, 2008, and subsequently terminated him in October, 2008.

Plaintiffs also argue that the Court "completely ignored uncontroverted evidence that Charmaine Clowney . . . found that East Stroudsburg University was the worst among the fourteen state universities in safeguarding students and ensuring compliance with federal

---

[5] In their Reply Brief, Plaintiffs take issue with Defendants' "claim to have removed Bernard from I. Sanders' program" because "Bernard had left the advancement office on his own prior to making his formal complaint of harassment." (Doc. 158, at 5). The material point is that Bernard was easily moved. It is irrelevant here whether Bernard left his job of his own accord or the University Defendants removed him. There is no dispute that Bernard no longer worked in the advancement office at the time he filed his complaint or that, during a meeting, Breese gave Bernard a list of work-study positions, from which Bernard chose a job at the Media Communications Department.

11

anti-discrimination laws." (Doc. 146, at 10). As a result of the University's "inadequate" procedures, Plaintiffs contend that ESU's compliance "could not result in an 'adequate investigation' into Bernard's complaint." (*Id.*). This circular argument ignores several facts. First, Clowney's statement that ESU had, in her opinion, "the worse [*sic*] and weakest EEO and Anti-Harassment policy of all 14 PA State System Universities" (Verified Statement of Charmaine Clowney, at 3), without more, does not necessarily mean that the policy was inappropriate and/or inadequate. Second, Clowney does not specifically address the deficiencies of the policy, rendering it impossible to determine whether a different policy would have led to a different result. Finally, Clowney does not purport to know the details of Bernard's accusations, the resulting investigation, or what steps anyone at the University, including Breese, V. Sanders, or Dillman, took to investigate the situation.[6] As a result, Clowney's opinions lack a sufficient basis with respect to the accusations and investigation at issue, and cannot raise a triable issue of fact as to whether Defendants acted with deliberate indifference. Without more information, as Defendants properly state, "it is impossible to determine whether these policies adversely affected the Breese investigation." (Doc. 154, at 20).

Finally, Plaintiffs' argument that the Court ignored or misinterpreted material facts that would demonstrate Dillman and V. Sanders' deliberate indifference to Bernard's

---

[6] The only reference that Clowney makes to I. Sanders inexplicably details an encounter she once had with him in a hotel and is completely unrelated to ESU's policies and the I. Sanders' investigation. (Verified Statement of Charmaine Clowney, at 6-7).

12

complaint, is based in part on allegations of "Dillman's apparent disinterest in the evidence Breese uncovered in his investigation", as established by "Dillman not only fail[ing] to meet with Breese, [but] his only communication with Breese after receiving Breese's report was a [10, 15, or 30 second] conversation." (Doc. 146, at 16). However, even if Breese "expected" to discuss the report with Dillman (Dep. of Arthur Breese, 84), Plaintiffs offer no indication that Breese had additional evidence that may have altered Dillman's decision, nor that Breese had changed his mind with respect to his ultimate conclusions at that time or attempted to communicate to Dillman any concerns he had with respect to Dillman's decision. Furthermore, Dillman's short conversation with Breese, without more, cannot properly imply an "apparent disinterest" in Breese's evidence or report.

### III. CONCLUSION

For the foregoing reasons, as well as those extensively discussed in the Court's Memorandum Opinion granting University Defendants summary judgment (Doc. 140), the Court will deny Plaintiffs' Motion (Doc. 145). A separate Order follows.

Robert D. Mariani
United States District Court Judge