IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANTZ BERNARD, et al.,** | : |
| **Plaintiffs** | : |
| v. | : 3:09-CV-00525 |
| | : (JUDGE MARIANI) |
| **EAST STROUDSBURG UNIVERSITY, et al.,** | : |
| **Defendants** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Plaintiffs' "Motion for Relief from a Judgment and Order and to Correct the Record" (Doc. 278).

On February 13, 2009, Plaintiffs, Frantz Bernard, Timotheus Homas, Anthony Ross, William Brown, Jerry Salter, and Dejean Murray commenced this action, alleging violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.,* as well as violations by Defendants, East Stroudsburg University, Robert J. Dillman, Kenneth Borland and Victoria L. Sanders (hereinafter "ESU Defendants" or "University Defendants") and Isaac W. Sanders, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Further, the Plaintiffs alleged violations by Defendants Dillman, Borland, and V. Sanders under 42 U.S.C. § 1986.

Both the University Defendants and I. Sanders moved for summary judgment on the claims of Bernard, Homas, and Ross.[1] (Docs. 93, 128). In response to the motions for summary judgment, Plaintiffs submitted as an exhibit the first 24 pages of a September 26, 2008 Report written by Jeffrey B. Miceli, Esq. (hereinafter "PASSHE Report") (Doc. 113). In April, 2014, this Court granted the University Defendants' motion for summary judgment (Doc. 141) and granted in part and denied in part Defendant I. Sanders' motion for summary judgment, leaving the remaining Plaintiffs' § 1983 claim for trial (Doc. 143). In May of 2014, Plaintiffs filed a motion pursuant to Fed. R. Civ. P. 59(e) to "Alter or Amend the Judgment Entered in Favor of Defendants East Stroudsburg University, Robert Dillman, and Victoria Sanders" with respect to Count I (Title IX) and Count II (42 U.S.C. § 1983) (Doc. 145), which the Court interpreted as a motion for reconsideration and denied. (Docs. 162, 163).

On September 19, 2014, Defendants filed a motion in limine requesting several rulings, including that Plaintiffs be prohibited "from using or referring to the Outside Counsel Reports" (also known as the PASSHE Report) (Doc. 168, ¶ 17). On October 3, 2014, the Court held a pre-trial conference in preparation for trial. On that date, the Court informed the parties that it did not have the full PASSHE Report, i.e. any pages beyond the 24 pages Plaintiffs provided in Document 113. Plaintiffs' counsel stated he would provide this Court with the PASSHE Report "in its entirety" for purposes of the Court's determination of the motion in limine. (Doc. 223, Pre-Trial Tr., Oct. 3, 2014, at 21). Plaintiffs' counsel

---

[1] In October, 2010, District Court Judge James Munley granted the Defendants' motions to dismiss the claims of Plaintiffs Brown, Murray, and Salter. (Doc. 48).

2

subsequently delivered to the Court's Chambers a full copy of reports by Jeffrey B. Miceli, Esq. dated September 26, 2008 and February 26, 2009, totaling 71 pages. Upon review of the full document, the Court granted the defendants' motion to preclude the use and/or reference to the Outside Counsel Reports. (Doc. 192).

A jury trial was held from October 27, 2014 through October 31, 2014. After deliberation, the jury found in favor of Defendant I. Sanders. Following the entry of judgment, Plaintiffs filed a "Rule 59 Motion for a New Trial or Amending a Judgment" (Doc. 220) alleging numerous pre-trial and trial errors including a brief argument that the trial court failed to consider the PASSHE Report in analysing whether Defendant Dillman was deliberately indifferent for purposes of summary judgment and that the Court erred in granting the motion in limine to preclude the PASSHE Report at trial. The Court denied Plaintiffs' Motion in its entirety. (Doc. 268). Plaintiffs then filed an appeal with the Third Circuit Court of Appeals on March 15, 2016.

On July 6, 2016, Plaintiffs filed a "Motion for Relief from a Judgment and Order and to Correct the Record." (Doc. 278). The Third Circuit thereafter stayed Plaintiffs/Appellants' appeal pending this Court's disposition of the present motion.

## II. ANALYSIS

Plaintiffs' "Motion for Relief from a Judgment and Order and to Correct the Record" requests relief pursuant to Federal Rules of Civil Procedure 60(a) and 60(b) and Federal Rule of Appellate Procedure Rule 10(e) (Doc. 278, ¶ 1).

Plaintiffs assert that on April 24, 2016, "while preparing the Appendix for the brief to be filed in this matter," counsel contacted the Middle District of Pennsylvania's Clerk's Office to inquire about Document 113.[2] (Doc. 279, at 4). To Plaintiffs' "great surprise, a clerk's office representative stated that docket 113 contained only 24 pages, rather than the complete document, and ended abruptly mid-sentence." (*Id.*). Plaintiffs now request that the Court "(1) inquire into the filing error or mistake (60 (a)), and (2) to determine the impact of the error upon the case (60 (b))." (*Id.* at 10). Plaintiffs' motion and accompanying brief request that Document 113, filed on July 31, 2013, be amended to include the full PASSHE Report and that the Court either "relieve" the plaintiffs of, or reconsider or modify, "the final judgment and order of the summary judgment." (*Id.* at 13).

"'The general purpose of Rule 60 is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done.'" *Harris v. Greater Cnty. Action Comm.*, 2016 WL 6236377, *1 (3d Cir. 2016) (quoting *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978)). The Third Circuit has explained:

> Rule 60(a) is concerned primarily with mistakes which do not really attack the party's fundamental right to the judgment at the time it was entered. It permits the correction of irregularities which becloud but do not impugn it. To that end 60(a) permits, inter alia, reasonable additions to the record. In contrast, Rule 60(b) is concerned with changing a final judgment, etc. In such a case the moving party understandably shoulders a much heavier burden.

---

[2] Document 113 is Plaintiffs' exhibit submitted in opposition to Defendants' motions for summary judgment which contains pages 1-24 of a Memorandum entitled "Isaac Sanders Investigation Summary" written by Jeffrey Miceli, Esq., otherwise referred to as the PASSHE Report.

4

*U.S. v. Stuart*, 392 F.2d 60, 62 (3d Cir. 1968).

"[A] motion to correct a clerical mistake does not affect the finality of the original judgment," *Barris v. Bob's Drag Chutes & Safety Equip. Inc.*, 717 F.2d 52, 55 (3d Cir. 1983), and a Rule 60(a) motion "can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced," *In re Diet Drugs Prods. Liab. Litig.*, 200 F.App'x 95, 103 (3d Cir. 2006) (quoting 11 Wright, Miller & Kane, *Federal Practice & Procedure* § 2854 at 240-241). Thus, Rule 60(a) "does not authorize the District Court to correct any and all wrongly decided substantive issues after the fact." *Id.* at 104. The Fifth Circuit has articulated the application of Rule 60(a) as follows, which the Third Circuit has cited approvingly:

> In sum, the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed. If, on the other hand, cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the government's blunders. Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

*Matter of W. Tx. Mktg. Corp.*, 12 F.3d 497, 504-505 (5th Cir. 1994). *See In re Diet Drugs*, 200 F.App'x at 104-105 ("We have approvingly quoted the Fifth Circuit's articulation of the

5

test for Rule 60(a)'s permissible application")); *see e.g. Pfizer v. Uprichard*, 422 F.3d 124, 130 (3d Cir. 2005).

Plaintiffs' motion pursuant to Rule 60(a) requesting that Document 113, filed on July 31, 2013, be amended to include the full PASSHE Report Rule will be denied. Rule 60(a) only provides relief to Plaintiffs as of October, 2014. At that time, it is undisputed that this Court received the full PASSHE Report from Plaintiffs, through their delivery of a hard copy of the 71 pages to the Court's Chambers. As the University Defendants admit, "[g]iven th[e] filing [of the Motion in Limine seeking to preclude the PASSHE Report], it would certainly appear that the full PASSHE Report is part of the record for purposes of this appeal." (Doc. 283, at 6). Plaintiffs will therefore be allowed to place the full PASSHE Report of record to reflect that the full Report was available to the Court *as of October, 2014*, for purposes of ruling on the motion in limine. Allowing Plaintiffs this relief is simply a clarification of the record, does not alter the factual record or require any new legal reasoning or the renewed resolution of any factual or legal issues. Its filing further has no effect on the final judgment in this matter. The filing of the full PASSHE Report of record as of October, 2014, is nothing more than a reasonable and appropriate addition to the record to reflect what was before this Court at that time.

Nonetheless, Rule 60(a) does not provide the proper avenue of relief for Plaintiffs' request that the record be altered to reflect that the full report was, or should have been, before the Court in July of 2013. This request by Plaintiffs requires more than the correction

of "mindless and mechanistic mistakes, [and/or] minor shifting of facts".[3] Thus, the Court must turn to Federal Rule of Civil Procedure 60(b).

Rule 60(b) "is broader in scope [than Rule 60(a)] and allows district courts to relieve a party from a judgment on motion and upon such terms as are just for reasons of mistake, inadvertence, surprise, excusable neglect, and other reasons, including 'any other reason justifying relief from the operation of the judgment.'" *In re Diet Drugs Products*, 200 F.App'x at 103 n.5.

Here, Plaintiffs' request "to determine the impact of the error upon the case (60 (b))" (Doc. 279, at 10), is in essence a request that the Court reconsider a summary judgment decision that this Court has already thoroughly addressed in the decision itself (*see* Doc. 140), in an opinion on Plaintiffs' motion for reconsideration (Doc. 162), and in the Court's post-trial memorandum opinion (Doc. 267). On summary judgment, the Court had before it the first 24 of 31 pages of what Plaintiffs characterize as "absolutely critical since they contain the relevant conclusions." (Doc. 279, at 6). Thus, the import of 7 pages omitted from Plaintiffs' exhibit is at issue. Plaintiffs' motion and accompanying brief fail to identify in any specific terms what difference these 7 pages would have made in this Court's analysis. Rather, Plaintiffs' brief articulates a general belief that the additional 7 pages would somehow have altered this Court's analysis of whether Dillman was deliberately indifferent

---

[3] The fact that the full report constitutes more than a minor alteration to the record should not be interpreted as a statement that the Court's grant of summary judgment to the ESU Defendants would have been different had the full report been before the Court.

7

under Title IX. (*See* Doc. 279 (citing Docs. 110, 111[4], at 35, 36; Doc. 252, at 8-10; Doc. 257, at 5-8)). Although Plaintiffs argue that the importance of the first 31 pages of the PASSHE Report is that they "fully confirmed the allegations of all six current and former students, which differed from the Dillman report" (Doc. 279, at 11), this argument lacks merit given that the allegations of the students are included in the 24 pages which *were* submitted to the Court on summary judgment. The Court compared that part of the PASSHE Report with Dillman/Breese's investigation and report.

Although the Court does not hold the view that Plaintiffs merit any further analysis of its summary judgment opinion, it notes that the entire Report was reviewed in connection with Defendants' motion in limine to exclude its admission, and the contents of the 7 pages could have made no difference to its analysis of whether Dillman was deliberately indifferent.

First, the Court notes that the Report at issue is dated September 26, 2008. Plaintiffs' contention is apparently that Miceli's Report creates an issue of fact that Dillman was deliberately indifferent when he found there was insufficient evidence to support Bernard's allegations and formal complaint over eight months earlier in January of 2008. At the time that Dillman made his decision, only Bernard had come forward with a formal complaint to the University. In contrast, at the time Miceli's Report was issued, Ross, Homas, and several other students had publicly come forward alleging inappropriate

---

[4] Although Plaintiffs cite to Documents 110 and 111, it is clear they are referencing their briefs in opposition to summary judgment, which are Documents 107 and 108.

8

conduct by I. Sanders.[5] Therefore, Miceli's investigation stemmed from allegations by a number of students and former students. Unlike at the time Breese prepared his report and Dillman made his decision, by the time Miceli prepared his report, it was no longer a situation of "he said/he said."[6] Further, at the time Miceli issued the Report, I. Sanders had already been placed on administrative leave as of July, 2008. (Doc. 113, at 4). Miceli's report was for the purpose of "mak[ing] recommendations concerning Dr. Sanders' continued employment at ESU." (Id. at 1).

Next, the first 24 pages of the Report consist of several detailed summaries of the alleged facts and any supporting evidence for the various allegations by I. Sanders' accusers and for I. Sanders' defenses. (See Doc. 113, at 1-13). Regardless of the fact that

---

[5] As set forth in the Court's "Undisputed Facts of Record" in the Memorandum Opinion granting the motion for summary judgment of ESU Defendants:
> Plaintiff Ross did not report his allegations to ESU until July of 2008, after Isaac Sanders was placed on leave. (Doc. 94, ¶ 138).
> William A. Brown, III . . . never reported his allegations to ESU until after he came forward in the summer of 2008 through Attorney Murray. (Doc. 94, ¶ 141).
> Dejean Murray . . . never reported his allegations to ESU until after he came forward in the summer of 2008 through Attorney Murray. (Doc. 94, ¶ 144).
> Jerry Salter . . . never reported his allegations to ESU until he came forward in the summer of 2008 through Attorney Murray. (Doc. 94, ¶ 147).

(Doc. 140, at 29).

[6] See Dep. of A. Breese:
**Q**: But aren't you saying that it was difficult-based upon what you see it was difficult to determine whether anything happened?
**Breese**: Yes.
. . . .
**Breese**: Well, from the way I-as facts as presented by that-you know, it was one person's word against another.
**Q**: He said/he said?
**Breese**: Exactly.
(Dep. of Arthur Breese, 61:18–62:1; 63:1–5).

9

these pages were indisputably of record at the time the Court considered the motions for summary judgment, Plaintiffs' underlying complaint appears to allege that the Court did not review *any* of the PASSHE Report. However, a lack of citation to the Report in the Court's memorandum opinion granting the University Defendants summary judgment is not, as Plaintiffs speculate, because the Court did not review the portion of the report of record, but rather because the Report was of little use in determining whether Dillman acted with deliberate indifference, particularly in January of 2008. The question before the Court was not, as Plaintiffs wish it was, whether the University Defendants conducted the most vigorous and extensive investigation possible. The fact that Attorney Miceli conducted what Plaintiffs believe was a more thorough investigation on a broader set of claims of misconduct does not change the factual record presented to the Court evidencing what actions were or were not taken by Dillman, as the decision maker, in making his final determination in January, 2008. As the Court noted in its memorandum opinion denying Plaintiffs' Rule 59 motion, with respect to the issue of deliberate indifference on summary judgment, "it is unclear how the PASSHE report could possibly vitiate the undisputed actions that were, or were not, taken in response to Bernard's complaint filed against I. Sanders on August 27, 2007." (Doc. 267, at 30).

The final 7 pages, not before the Court on summary judgment, contain the following information: (1) a continuation of the prior findings regarding I. Sanders' financial conduct (PASSHE Report, at 25-26); (2) a brief summary of the "Anthony Ross Payment" and

"Questionable Expense Items" (*id.* at 27-28); (3) a "Summary of Findings Regarding Improper Contact Allegations Involving Sanders and Present and Former ESU Employees, Students and Donors" (*id.* at 28-29); (4) a "Summary of Conclusions Based upon the Findings" (*id.* at 29-30); and (5) "Recommendations" (*id.* at 30-31).

With respect to I. Sanders' alleged financial misconduct, as previously explained by the Court, Plaintiffs did not "establish[] the extent to which, if any, a further investigation by Breese into I. Sanders' financial transactions would have provided additional probative information in relation to the sexual harassment allegations" (Doc. 140, at 56), and a review of the missing two pages of Miceli's Report on this issue offers no additional guidance. As to the payment to Ross, the Court addressed this $811 payment in its summary judgment opinion (Doc. 140, at 38, 49-50). Miceli's findings of "questionable expense items" relate to allegations that I. Sanders used University funds to "groom the complainants or for other personal purposes." (PASSHE Report, at 27). These findings could not have altered this Court's summary judgment decision given that the Court found that there were triable issues of fact regarding whether Plaintiffs were subject to quid pro quo sexual harassment (Doc. 140, at 35-41). The "Summary of Findings Regarding Improper Contact Allegations Involving Sanders and Present and Former ESU Employees, Students and Donors" relates to I. Sanders' improper contact with these individuals following being placed on leave in July, 2008. (PASSHE Report, at 28-29). These allegations and findings therefore could not have been before Dillman at the time he made his decision in January of 2008 and are not

11

relevant to a determination of whether Dillman was deliberately indifferent at that time. Finally, the "Summary of Conclusions Based upon the Findings" and "Recommendations" (*id.* at 29-31) are merely that – a summary of the Report and a recommendation, in September 2008, that I. Sanders be terminated, neither of which provide new and relevant information that could alter a finding by this Court that there was no triable issue of fact as to whether Dillman was deliberately indifferent in January, 2008.

A further review of the contours of Rule 60(b) demonstrates that Plaintiffs are not entitled to have the entire PASSHE Report considered as being filed as of July, 2013, or to a reconsideration of this Court's summary judgment decision. Plaintiffs broadly request relief under Rule 60(b)(1) and (6) (Doc. 279, at 10) without citation to any case law which may support this request.[7] Nor do Plaintiffs specify what portion of Rule 60(b)(1) they are relying on, i.e. mistake, inadvertence, surprise, or excusable neglect. Regardless, although "Rule 60(b) provides for relief from judgements involving 'mistake, inadvertence, surprise, or excusable neglect' . . . , relief under Rule 60(b) is 'extraordinary,' and 'may only be invoked upon a showing of exceptional circumstances.'" *U.S. v. Tuerk*, 317 F.App'x. 251, 253 (quoting *Mayberry v. Maroney*, 529 F.2d 332, 336 (3d Cir. 1976)). *See also, Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dept. of Elections*, 174 F3d 305, 311 (3d Cir. 1999) (quoting *Martinez-McBean v. Gov't of Virgin Islands*, 562 F.2d 908, 911 (3d Cir. 1977)

---

[7] Plaintiffs' entire brief in support of their motion contains only two case citations, both on the last page of Plaintiffs' "Discussion and Analysis" section and neither of which directly addresses Rule 60. (*See* Doc. 279, at 12).

12

(under Rule 60(b)(6), relief "is available only in cases evidencing extraordinary circumstances")); *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002) ("Rule 60(b)(6) is a catchall provision which allows a court to relieve a party from the effects of an order for any other reason justifying relief from the operation of the judgment. However, this court has consistently held that the Rule 60(b)(6) ground for relief from judgment provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances.") (internal citations and quotation marks omitted).

Here, Plaintiffs have not pointed to any "extraordinary" or "exceptional" circumstances such that relief should be provided under either Rule 60(b)(1) or 60(b)(6). The fact that Plaintiffs waited two years to ask that the record be supplemented and the Court reconsider, for the third time, its opinion granting summary judgment, this time on the grounds that the full PASSHE Report was not of record when the Court issued its summary judgment opinions and orders, and therefore portions and in particular 7 pages, were not considered, negates Plaintiffs' ability to claim that a simple "mistake" or "inadvertence" is to blame for their current issue.

Specifically, although Plaintiffs claim that on April 24, 2016, to their "great surprise" they were informed that Docket 113 contained only 24 pages (Doc. 279, at 4), this "surprise" is disingenuous. Plaintiffs were told at the pre-trial conference on October 3, 2014 that "[p]ortions [of the Report] were submitted, but there was [*sic*] large parts that were redacted

13

of what we [the Court] had." (Doc. 223, Pre-Trial Tr., Oct. 3, 2014, at 7). That statement was followed by Plaintiffs' counsel's explanation that the PASSHE Report:

> was to be utilized by witnesses who testified in depositions and the parties, and for no other purpose. And that, in the depositions, what was supposed to happen is, if we questioned a witness about the report and the substance of the report, that would be submitted to the Court under seal. So what would happen, if I asked Harry Coleman [I. Sanders' counsel] about, Did you see this report, so and so, it makes an allegation here, and he responds to that, that response would be submitted -- it's admissible, but submitted to the Court under seal so that the public would not see that. For example, when we responded to the Motions for Summary Judgment, what ends up happening is that, if we submitted the PASSHE Report, it would be in violation of the Court Order. So we would redact it and submit portions that were – portions just for the Court to see but not the public to see.

(*Id.* at 8). Plaintiffs' counsel then stated that he "had always been under the impression, when [Plaintiffs] filed the motions and the report, that the Court had seen and read the PASSHE Report, but not in its totality, the totality of the report is 71 pages. The critical portions of the report are from Page 1 to 31, which reaches the conclusions." (*Id.* at 8-9). In response to Plaintiffs' counsel's statement that "[t]he testimony from the witnesses like Dr. Dillman and whatever that we submitted, those were submitted to the Court under seal[; a]nd, also, it was agreed in the depositions that the PASSHE report would be admitted," I. Sanders' counsel made clear that "[n]o one, but no one admitted in discovery depositions what would or would not be admissible at trial[; a]t least, if they did, no one spoke on my behalf or for my client." (*Id.* at 9). In any event, Plaintiffs provided the Court with the complete PASSHE Report, including the 31 "critical" pages, immediately following the pre-trial conference. (*See* Letter from Nancy Abrams, Doc. 291-1, Ex. B). This act leaves no

14

question that as of October 3, 2014, Plaintiffs' counsel was aware that Document 113 consisted of 24 rather than 31 pages. To the extent that Plaintiffs have voiced a concern that the PASSHE Report, as docketed at Document 113, consists of only 24 pages rather than 31 pages, that presents a concern that they should have had as of October 3, 2014 when they were told the Court did not have the entire Report and thereafter provided the Court with a copy of the full Report. Plaintiffs were therefore put on notice as of 2014 that the Court had only received the first 24 pages of the PASSHE report.

Furthermore, in the Court's memorandum opinion denying Plaintiffs' Rule 59 Motion, issued in February, 2016, the Court made the following statement:

> Only a portion of the September 26, 2008 Report written by Attorney Miceli (Doc. 113) was submitted by Plaintiffs. (*See* Doc. 113). The Report ends abruptly on page 24, in mid-sentence, and it is abundantly clear that there are multiple pages missing. At [the October 3, 2014] pre-trial conference, Attorney Murray admitted that he "had always been under the impression, when [Plaintiffs] filed the motions and the report, that the Court had seen and read PASSHE Report, *not in its totality. The totality of the report is 71 pages. The critical portions of the report are from Page 1 to 31, which reaches the conclusions.*" (Pre-Trial Tr., Oct. 3, 2014, at 18, [Doc. 223, at 8-9]) (emphasis added).

(Doc. 267, at 30-31 n. 12).

Plaintiffs thus not only had been aware of the state of the record for almost two years at the time they filed the present motion in July, 2016, they were told again in February of 2016. Yet Plaintiffs took no action to remedy this alleged docketing issue prior to filing their appeal in March, 2016 and now claim that they were not aware of the limited contents of Docket 113 until April, 2016. Plaintiffs are belatedly asking the Court to attempt to discover

15

why, over three years ago in July of 2013, and two years after being notified that the Court had only ever received part of the PASSHE Report, the full report was not filed of record when Plaintiffs' absence of diligence in timely pursuing this issue and their own responsibility for the state of the docket is manifest.

Plaintiffs have had ample opportunity to request that the Court "correct" the record prior to the filing of the present motion, including in their post-trial motion. The delay occasioned by Plaintiffs' failure to do so was directly in their control. To claim that they were surprised the Report was not fully of record or that the Clerk's office made a mistake of which they were not aware until the filing of their appeal is insincere at best. Additionally, in light of this Court's repeated notification to Plaintiffs that it did not have the full PASSHE Report prior to October, 2014, to now request that the Court modify the record as of July, 2013, and vacate its grant of summary judgment to the University Defendants more than two years after summary judgment was granted in their favor is highly and unfairly prejudicial to these Defendants.[8]

To the extent that Plaintiffs are making assertions of legal error on the Court's part in granting summary judgment to the University Defendants, these are issues for appeal

---

[8] The prejudice to Defendants is further exacerbated by the fact that Robert Dillman, an integral defendant in the determination of whether an issue of fact existed with respect to whether the University Defendants were deliberately indifferent, has passed away.

As the Court previously found when denying Plaintiffs' Rule 59 Motion, because Plaintiffs were properly notified of Dillman's death and the name of his personal representative and never chose to substitute her as a party, Dillman must be dismissed pursuant to Federal Rule of Procedure 25. (Doc. 267, at 38 n. 15). Therefore, because Dillman is no longer a defendant in this action, even if the Court were to vacate its grant of summary judgment in the University Defendants' favor, it would only affect the judgment with respect to Victoria Sanders, Kenneth Borland, and ESU.

before the Third Circuit. See *Martinez-McBean,* 562 F.2d at 911 ("courts must be guided by the well established principle that a motion under Rule 60(b) may not be used as a substitute for appeal. It follows therefore that it is improper to grant relief under Rule 60(b)(6) if the aggrieved party could have reasonably sought the same relief by means of appeal.") (internal citations and quotation marks omitted).[9]

Finally, Plaintiffs' attempt to single-mindedly blame the Clerk of Court's office for the fact that the full Report was not filed in July of 2013 impermissibly attempts to absolve Plaintiffs' counsel of any responsibility that they owe to the Court and their clients. By merely placing the documents in the mail to the Clerk of Court's Office or handing them to a person in the Clerk's Office, Plaintiffs cannot claim that they no longer have any duty to ensure that documents are properly filed and that their brief in opposition to summary judgement and all accompanying exhibits were complete. Even if the Court were to accept that the Clerk's Office failed to file the reports in their entirety, Plaintiffs should have checked the docket not only at the time that the reports were filed to ensure they were

---

[9] For example, Plaintiffs' Reply briefs for the first time argue that this Court should reconsider its ruling on the motion in limine precluding the PASSHE Report. (Doc. 291, at 2, 5, 11-14; Doc. 293, at 2, 5, 10-14). Not only need the Court not consider this request because it is raised for the first time in a Reply brief, the request itself is entirely outside the scope of Rule 60 and has no relevance to the issue of whether the PASSHE Report should be of record. Furthermore, the Court has already addressed the propriety of its ruling on the motion in limine in denying Plaintiffs' Rule 59 motion. Whether the first PASSHE Report was properly excluded at trial is an issue for the Third Circuit if raised on appeal.

complete, but certainly after Plaintiffs were made aware of the fact that pages were missing from their submission in October of 2014.[10]

### III. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will deny Plaintiffs' "Motion for Relief from a Judgment and Order and to Correct the Record" (Doc. 278). However, because a full copy of the reports by Jeffrey Miceli, Esq. dated September 26, 2008 and February 26, 2009 were delivered by Plaintiffs' counsel to the Court immediately following the pre-trial conference on October 3, 2014, and these reports were relied upon by this Court in its ruling on a motion in limine, a sealed copy of the reports may be filed of record in this action as of October 3, 2014.

A separate Order follows.

Robert D. Mariani
United States District Judge

---

[10] To the extent that Plaintiffs speculate that the Court did not review their Response to University Defendants' Statement of Material Facts, because if it had, the Court would have seen that pages which Plaintiffs referenced were missing from the record (Doc. 291, at 10; Doc. 293, at 10), Plaintiffs' contentions are based on a false premise. It is not this Court's duty, upon reviewing the record and noting that certain pages or documents referenced by a party are not attached, to notify that party of the absence of such documentation. Rather, counsel has a responsibility to check that their submissions, including briefs and all exhibits, are properly and fully appear on the record. To shift that burden to the Court promotes judicial inefficiency and allows attorneys to engage in lazy and careless behavior while forcing a Court to review that attorney's work not simply for the purposes of deciding the motion before it, but to oversee, correct, and ensure compliance with, the attorney's professional and clerical duties.